**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **TUNISIA LOUISE SPRY GREEN,** <br> Plaintiff, <br> v. <br> **NANCY A. BERRYHILL**, Acting Commissioner of Social Security, <br> Defendant. | NO. CV 17-0967-KS <br><br> **MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Tunisia Louise Spry Green ("Plaintiff") filed a Complaint on February 7, 2017, seeking review of the denial of her application for supplemental security income ("SSI"). (Dkt. No. 1 ("Complaint").) On March 16, 2017, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. No. 13,) On November 13, 2017, the parties filed a Joint Stipulation. (Dkt. No. 21 "Joint Stip.").) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 16-17.) The Commissioner requests that the ALJ's decision be affirmed or, in the

1

alternative, remanded for further proceedings. (*Id.* at 17.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On May 23, 2013, Plaintiff, who was born on March 18, 1969, filed an application for supplemental security income, alleging disability commencing November 6, 2012 due to carpel tunnel syndrome, hypertension, anxiety, and bronchitis.[1] (*See* Administrative Record ("AR") 125-47; 148-53.) Plaintiff previously worked as phone banker, caregiver, and cook. (AR 199.) After the Commission denied Plaintiff's application on October 21, 2013 (AR 59-70), Plaintiff requested a hearing (AR 80-82). Administrative Law Judge Barbara Dunn ("ALJ") held a hearing on February 10, 2015. (AR 31-58.) Plaintiff, who was represented by counsel, testified before the ALJ, as did vocational expert ("VE") Ruth Arnush. (*See Id.*) On May 20, 2015, the ALJ issued an unfavorable decision, denying Plaintiff's application for SSI. (AR 17-30.) On December 8, 2016, the Appeals Council denied Plaintiff's request for review. (AR 1-7.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ, applying the five step evaluative process, first found that Plaintiff had not engaged in substantial gainful activity since her May 20, 2013 application date. (AR 22.) The ALJ found at step two that Plaintiff had the following severe impairments: cervical and lumbar strain, hypertension, obesity, bilateral carpal tunnel syndrome, and intermittent lower extremity edema. (AR 22-23.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 416.920(d),

---

[1] Plaintiff was forty-four years old on the application date and thus met the agency's definition of a younger individual. *See* 20 C.F.R. § 416.963(c).

2

416.925, and 416.926). (AR 24.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> [N]o more than frequent handling; no more than occasional ramps, stairs, balance, stoop, kneel, crouch, crawl; no more than occasional exposure to dusts, fumes, gases, and poor ventilation; no exposure to temperature extremes or hazards; and no climbing ladders, ropes, or scaffolds.

(AR 24.) The ALJ found at step four that Plaintiff was capable of performing her past relevant work as a caregiver. (AR 27.) Based on this finding, the ALJ did not address the last step of the process, *i.e.*, whether Plaintiff was able to do any other work considering her RFC, age, education, and work experience. (*See id.*)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v.*

*Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff alleges that the ALJ failed to properly evaluate the credibility of Plaintiff's subjective complaints. (Joint Stip. at 4.)

### I.    Applicable Law

The sole issue in dispute is whether the ALJ properly evaluated the credibility of Plaintiff's statements about her symptoms and limitations. (Joint Stip. at 4.) An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

4

symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms," and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (A court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard.").

In weighing a plaintiff's credibility, the ALJ may consider a number of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).[2]

//

//

---

[2] Effective March 28, 2016, Social Security Ruling ("SSR") 16-3p superceded SSR 96-7p, which required the ALJ to assess the credibility of a claimant's statements. SSR 16-3p focuses on the existence of medical cause and an evaluation of "the consistency of the individual's statements about the intensity, persistence, or limiting effects of symptoms with the evidence of record without consideration of the claimant's overall 'character or truthfulness'." *See* Guide to SSA Changes in Regulations and Rulings 2016-17, June 2017. It is unclear if SSR 16-3p applies retroactively, but the Court need not resolve that issue because the Ninth Circuit has acknowledged that SSR16-3p is consistent with existing precedent that requires that the assessments of an individual's testimony be focused on evaluating the "intensity and persistence of symptoms" after the ALJ has found that the individual has medically determinable impairments that could reasonably be expected to produce those symptoms. *Trevizo v. Berryhill*, 862 F.3d 987, 995, n.5 (9th Cir. 2017).

5

## II. Plaintiff's Subjective Complaints and the Treatment Records

In the function report, dated September 9, 2013, Plaintiff stated that she was unable to work because of an inability to stand for long periods of time, swelling in her hands, and serious and chronic pain in her feet, back, and legs. (AR 186.) Plaintiff also claimed that she was unable to do any lifting or get out of bed. (*Id.*) In addition, her medications caused her to feel "slower" and "out of it for hours at a time." (*Id.*) Plaintiff also stated that she had difficulty dressing, bathing, taking care of her hair, making meals, using a toilet, and cleaning. (*Id.* at 188.) Plaintiff stated that she only left the house when "necessary or mandatory." (*Id.* at 190.) Moreover, she could not shop, pay bills, or manage any of her finances without her children's assistance. (*Id.*)

In an evaluative report prepared by Millennium Multispecialty Medical Group on September 25, 2013, Dr. John Sedgh noted that Plaintiff "present[ed] with the chief complaints of hypertension, low back and neck pain and chronic bronchitis." (AR 238.) Plaintiff stated that she suffered from hypertension for nine years. (*Id.*) Regarding her low back and neck pain, Plaintiff used a cane as an assistive device. (*Id.*) With respect to her history of bronchitis, Plaintiff complained of shortness of breath on exertion after walking three-fourths of a block. (*Id.*) She also stated that she used an inhaler and had a history of anxiety. (*Id.*) At the time of the report, Plaintiff was taking lasix, amlodipine, clonidine, diclofenac, Vicodin, metoprolol, and alprazolam. (*Id.* at 239.)

The physician also conducted a physical examination, including formal testing. (AR 239.) He concluded that, with respect to her hypertension, Plaintiff's blood pressure was 137/79, and there was no evidence of stroke or congestive heart failure. (*Id.* at 242.) Plaintiff displayed low back and neck strain. (*Id.* at 243) Dr. Sedgh also observed limited motion in her upper and low back, and Plaintiff's "straight-leg raising was negative bilaterally in the seated position." (*Id.*) Plaintiff did not appear to have spasms. (*Id.*) Her gait was slow and

6

slightly to moderately antalgic.  (*Id.*)  Regarding her complaints of chronic bronchitis, "[Plaintiff]'s lung examination was normal." (*Id.*)

In his functional assessment, Dr. Sedgh concluded:

> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently.  She can stand and walk six hours in an eight-hour day with normal breaks.  She can sit for six hours in an eight-hour day.  Kneeling, crouching, and stooping should be limited to occasional.  She should avoid dust and fumes secondary to chronic bronchitis.  She can reach above shoulder level and perform fine and gross manipulations without limitations. . . . [Plaintiff] does not need any type of assistive device for ambulation.

(AR 243.)

The report also included radiographs of the lumbar spine and cervical spine.  (AR 244, 245.)  The radiographs of the lumbar spine showed calcified abdominal aorta, "[o]therwise, the osseous structures [were] grossly unremarkable."  (*Id.* at 244.)  In addition, the vertebral bodies and intervertebral disc spaces [were] normal in height and the pedicles were intact.  (*Id.*)  The radiographs of the cervical spine demonstrated "loss of normal cervical curvature, suggestive of paraspinal muscle spasm." (*Id.* at 245.)  Again, "the osseous structures [were] unremarkable," and "[t]he vertebral bodies and intervertebral disk spaces [were] normal in height."  (*Id.*)  The prevertebral soft tissue was also intact.  (*Id.*)

On October 12, 2013, Dr. Norma A. Aguilar of Millennium Multispeciality Medical Group completed a psychiatric evaluation of Plaintiff.  Plaintiff reported suffering from anxiety due to carpal tunnel and injuries resulting from a car accident in 2005.  (AR 247-48.)  Plaintiff also complained of feeling "a little depressed," crying frequently, and having low

energy, poor sleep, and a "so-so" appetite. (*Id.* at 248.) In addition, Plaintiff complained of hearing voices, seeing things in the shadows, becoming paranoid, having difficulty focusing and concentrating, and becoming forgetful. (*Id.*) Plaintiff denied any prior inpatient or outpatient psychiatric treatment and only took alprazolam for her psychiatric issues. (AR 248.) With respect to her daily activity, Plaintiff reported not engaging in "much activities when [she was] in pain." (*Id.* at 249.)

During the evaluation, Plaintiff appeared normal and cooperative, and her speech was clear and coherent. (AR 249.) She was slightly depressed, but her affect appeared appropriate, and she had no psychomotor retardation or suicidal or homicidal plans or thoughts. (*Id.*) Moreover, Plaintiff did not exhibit looseness of association, thought disorganization, flight of ideas, or thought blocking. (*Id.*) The evaluation also concluded that Plaintiff had "no delusions, thought broadcasting, thought insertion, phobias, obsession, derealizations and depersonalization." (*Id.*) Despite her claims of auditory and visual hallucinations, Plaintiff did not appear to respond to internal stimuli. (*Id.*) In addition, Plaintiff was alert and oriented to time, place, person, and purpose. (*Id.*)

Dr. Aguilar also tested Plaintiff's concentration and calculation, her fund of information and intelligence, and her insight and judgment. (*Id.* at 249-50.) In the functional assessment, Dr. Aguilar concluded:

> [Plaintiff]'s ability to follow simple oral and written instructions was not limited. Her ability to follow detailed instructions was not limited. Her ability to interact with the public, coworkers and supervisor was not limited. [Plaintiff]'s ability to respond to changes in a routine work setting was not limited. Her ability to respond to work pressure in a usual working setting was mildly limited. Her daily activities were mildly limited due to physical problems.

(*Id.* at 250.) Dr. Aguilar concluded, "From a psychiatric standpoint, prognosis is good." (*Id.*)

Plaintiff's records also include a treatment report conducted by the Neurology Center, Adults and Children, on February 6, 2015. (AR 254.) The report notes that Plaintiff suffered severe constant stabbing neck and back pain. (*Id.*) Plaintiff also suffered difficulty ambulating, intermittent claudication in her calves, numbness and tingling in her toes, severe cramping in her legs and arms, swelling in her ankles and feet, and varicose veins in both of her legs below the knee. (*Id.*)

The center conducted both a physical and a neurological examination of Plaintiff. (AR 254-56.) The physical evaluation showed that Plaintiff had normal lung expansion and breath sounds within normal limits. (*Id.* at 254.) In her neck, Plaintiff had "cervical/thoracic tenderness and paraspinal spasms elicited on palpation of the paraspinal musculature." (*Id.* at 255.) There was also lumbosacral tenderness in her back and "paraspinal spasm elicited on palpation of the lumbosacral musculature." (*Id.*) Plaintiff had a full range of motion in her extremities. (*Id.*) The neurological examination showed that Plaintiff was "alert and oriented to person, place and time." (*Id.*) Intelligence, reading/writing, language, and mood were all declared normal. (*Id.* 255.)

At the February 10, 2015 hearing, Plaintiff stated that she required a walker "most of the time" because she could not stand for more than five to ten minutes. (AR 43.) Plaintiff used the walker to help with sitting and standing, and she used a cane while she was at home. (*Id.* at 43, 48.) In addition, Plaintiff could only sit for up to thirty minutes because of back pain. (*Id.* at 45.) Because of her carpel tunnel, Plaintiff stated she had difficulty lifting and carrying household items, including bleach, a gallon of milk, or a pan. (AR 48.) At most, she could pick up a cup. (*Id.* at 49.) Plaintiff also testified that she could no longer perform her previous work as a phone banker because her hands do not allow her to punch numbers. (*Id.*

at 49-50.) Regarding her anxiety, Plaintiff stated that she used Xanax approximately four times a month for panic attacks. (AR 56.)

### III. The ALJ's Credibility Determination

Plaintiff concedes that "[t]here is no doubt that this record is very small, [and] there is no doubt that there are no treatment notes." (Joint Stip. at 15.) Plaintiff nonetheless argues that the ALJ improperly utilized the lack of medical evidence to discount Plaintiff's credibility about the severity of her symptoms. (*Id*.) Plaintiff's argument misses the mark: the ALJ did not base her conclusion solely on a lack of medical evidence. Instead, the ALJ properly relied on evidence in the record to reach her conclusion regarding Plaintiff's credibility, elucidating two distinct reasons for her credibility determination: (1) The objective medical findings were inconsistent with Plaintiff's allegations; and (2) Plaintiff's medical records showed a fairly conservative course of treatment.

### A. The ALJ Discounted Plaintiff's Symptom Testimony Based on Inconsistencies Between Plaintiff's Testimony and Objective Medical Findings

In assessing a claimant's subjective testimony about her pain, the ALJ is permitted to consider "minimal objective evidence," among other factors. *Burch*, 400 F.3d at 681. The ALJ may not categorically discredit subjective pain testimony merely because it is unsupported by objective medical findings. S*ee Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989). However, the ALJ may consider "the conflict between [the plaintiff's] testimony of subjective complaints and the objective medical record," and find that the latter does not support the former. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Here, the ALJ properly concluded that "inconsistent with [Plaintiff]'s allegations

this case, and fully consistent with the residual functional capacity found in [the] decision is the medical opinion of record. (AR 26.)

The results of the examinations conducted by Millennium Multispecialty Medical Croup contrasted with Plaintiff's claims regarding the severity of her symptoms. As the ALJ noted, with specific examples from the medical records, "Lumbar x-rays . . . showed calcified abdominal aorta but were otherwise normal" (*Id.*) In spite of her complaints of chronic bronchitis, the results of Plaintiff's lung examination were normal. (AR 26 (citing AR 240).) Plaintiff also "had a normal neurological examination with normal motor strength, sensation, reflexes, and a slow, slight to moderately antalgic gain." (AR 26 (citing AR 238-46; 254-56).) Therefore, the ALJ rightly concluded that "[t]hese findings simply do not support the degree of limitation the claimant alleges." (*Id*.)

Furthermore, the "only medical opinion of record" militated against a finding of disability. (AR 26.) Instead of concluding that Plaintiff was disabled, Dr. Sedgh indicated that Plaintiff "could perform light work but was limited to occasional kneeling, crouching, and stooping, and should avoid dust and fumes due to her chronic bronchitis." (*Id.* (citing AR 234).) Whereas Plaintiff claimed to require the use of both a walker and cane to sit and stand (AR 43, 48), Dr. Sedgh "opined [that Plaintiff] did not require an assistive device for ambulation" (AR 25 (citing AR 243)). At the hearing, Plaintiff claimed that she was unable to lift anything heavier than a cup because of issues with her wrists and hands. (AR 49.) In contrast, Dr. Sedgh found that Plaintiff had a "normal grip" and found "no evidence of any abnormalities in her wrists" (AR 26 (citing AR 241).)

The ALJ provided examples of specific and legitimate inconsistencies between the medical records and Plaintiff's subjective testimony supported by substantial evidence in the record in finding Plaintiff's statements regarding her subjective symptoms less than fully credible. The record available does not show that Plaintiff's conditions rendered her totally

disabled within agency guidelines. Thus, the ALJ was entitled to base her determination, in part, of the lack of available evidence in the record to support Plaintiff's claims. "[Plaintiff]'s allegations [were] simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." (AR 26.)

## B. The ALJ Discounted Plaintiff's Symptom Testimony Based on Her Conservative Course of Treatment

The ALJ also properly discounted Plaintiff's testimony because of her conservative course of treatment. The ALJ may "consider lack of treatment in his credibility determination." *Burch*, 400 F.3d at 681. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see also Tommasetti*, 533 F.3d at 1040 (claimant's favorable response to conservative treatment undermined claimant's reports regarding the disabling nature of his pain).

Here, after the ALJ summarized Plaintiff's course of treatment, she concluded, "Overall, [Plaintiff]'s course of treatment is at odds with what one might reasonably expect, given his [sic] allegations of totally disabling symptoms." (AR 25.) In reaching this conclusion, the ALJ relied on specific examples in the record to support her conclusion that Plaintiff's course of treatment was conservative. For instance, the ALJ considered that "the record is devoid of any indication that [Plaintiff] was prescribed or relied on an assistive device for ambulation." (AR 25.)

Moreover, even though Dr. Hamza indicated that he had seen Plaintiff in April and May of 2014, the medical record includes just one treatment record. (AR 26; (*see* AR 253-56).) Notably, the ALJ held the record open for over a month after the hearing so that Plaintiff could provide additional evidence of treatment, but Plaintiff failed to do so. (AR

26.) *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (citing 42 U.S.C. § 423(d)(5)) ("It was [Plaintiff's] duty to prove that she was disabled.")

The ALJ properly concluded that the "notable paucity of medical treatment for [Plaintiff's] allegedly disabling impairments" militated against a finding of disability. (AR 25.) Plaintiff did not present the Commission with a treatment records that comported with her subjective complaints. (*See, generally Id.*); s*ee Orn*, 495 F.3d at 638 ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment . . . for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.")

Thus, Plaintiff's conservative course of treatment and the inconsistencies between the severity of her subjective complaints and the medical record constitute specific, clear, and convincing reasons supported by substantial evidence in the record for discounting Plaintiff's subjective symptom testimony. Accordingly, the record supports the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: March 5, 2018

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE